## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONNA L. DULL and** | : | **CIVIL ACTION NO. 1:07-CV-0307** |
| **HOLLY DULL,** | : | |
| | : | **(Judge Conner)** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WEST MANCHESTER TOWNSHIP** | : | |
| **POLICE DEPARTMENT, WEST** | : | |
| **MANCHESTER TOWNSHIP,** | : | |
| **ARTHUR D. SMITH, JR., SEAN** | : | |
| **CONWAY, PETER HAINES, DAVID** | : | |
| **KELLER, DAVID BIXLER, STEVEN** | : | |
| **CRIDER, YORK CITY POLICE** | : | |
| **DEPARTMENT, CITY OF YORK,** | : | |
| **MARK L. WHITMAN and JOHN DOE,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiffs Donna Dull and her daughter, Holly Dull, bring this suit pursuant to 42 U.S.C. § 1983 alleging violations of their Fourth and Fourteenth Amendment rights during their arrest and detention in March 2005. Plaintiffs also advance tort claims pursuant to Pennsylvania law. Defendants are West Manchester Township, the City of York, and their respective police officers and chiefs. Defendants have filed motions to dismiss (Docs. 22, 23) certain of the federal and state claims against them. Plaintiffs have filed a motion to amend the complaint (Doc. 33) to substitute York City police officer Nicholas Figge for a previously fictitious defendant. For the reasons that follow, the motions to dismiss (Doc. 22, 23) will be granted in part and denied in part, and the motion to amend (Doc. 33) will be granted.

I.    **Statement of Facts**[1]

On March 13, 2005, plaintiff Donna Dull ("Donna") delivered photographic

film to Wal-Mart, located at the West Manchester Mall in York, Pennsylvania, for

development.  (Doc. 1 ¶ 28.)  She and her daughter, Holly Dull ("Holly"), returned to

the mall to retrieve the film the following day.  (Id. ¶ 29.)  Donna and Holly parted

company upon arrival at the mall, and Donna entered Wal-Mart to obtain her

prints.  A Wal-Mart employee informed Donna that the photographs could not be

returned to her because Wal-Mart staff questioned their propriety and had

contacted the West Manchester Township Police Department.  (Id. ¶ 30.)  Donna

was told to contact the police to resolve the situation.  (Id. ¶ 31.)

Donna left Wal-Mart and completed other errands at the mall before

returning to her vehicle.  (Id.)  In the interim, the Wal-Mart employee had

apparently contacted the police, who arrived at Donna's vehicle as she backing out

of a parking space.  (Id. ¶ 32.)  A police vehicle operated by defendant Officer Sean

Conway ("Conway") parked behind her, blocking her egress.  (Id.)  Conway

approached Donna and instructed her to exit her vehicle.  (Id. ¶ 33.)  Backup

officers arrived on the scene, among whom were defendants West Manchester

Township Police Sergeant Peter Haines, Detective David Bixler ("Bixler"),

---

[1]In accordance with the standard of review for a motion to dismiss, the court
will present the facts as alleged in the counterclaims. See infra Part II.  The court
will relate allegations in the complaint only to the extent necessary to present a
complete depiction of the factual background of the counterclaims.  The statements
contained herein reflect neither the findings of the trier of fact nor the opinion of
the court as to the reasonableness of the parties' allegations.

Detective Steven Crider,[2] and Officer David Keller.  (Id. ¶ 35.)  An unidentified York City police officer also responded.  (Id.)

Conway repeated his command that Donna exit her vehicle, and she complied.  (Id. ¶ 36.)  Conway handcuffed Donna, who stated:  "Please don't do that."  (Id. ¶ 38.)  In response, one or more of the officers forced Donna into the side of a nearby parked vehicle despite her alleged lack or physical resistance.  (Id. ¶ 39.)  Donna was unable to identify which officers assailed her because her back was toward them.  (Id. ¶ 42.)

Holly left the mall as police were arresting Donna and approached the Dulls' vehicle.  (Id. ¶ 46.)  She identified herself and asked why police were arresting her mother, and  Bixler responded by instructing officers to take Holly into custody as well.  (Id. ¶¶ 46-47.)  Donna and Holly were taken to West Manchester Township Police Department headquarters.  (Id. ¶ 51.)  Donna remained in handcuffs for approximately two hours, allegedly causing her to lose feeling in her hands and fingers.  (Id. ¶ 52.)  She requested that police remove the handcuffs.  The police complied but replaced the handcuffs with a leg iron attached to a tether.  (Id. ¶ 53.)[3]

---

[2]The caption of plaintiffs' complaint identifies Bixler and Crider's rank as "Officer"; however, plaintiffs' narrative of events states that they are detectives. The court has adopted the rank described in the substantive allegations of the complaint for purposes of this memorandum.

[3]The complaint does not state whether Holly was released or detained with Donna.

Donna and Holly were eventually released.  Donna subsequently faced criminal charges associated with the suspect photographs.  (Id. ¶ 55.)  The York County District Attorney moved for dismissal of those charges on June 21, 2006.  (Id.)  No charges were filed against Holly.  (Id. ¶ 56.)

As a result of the arrest, Donna alleges that she has chest and breast pain, a bruised rib, and pain in her neck, back, and chest.  (Id. ¶ 58.)  She has also suffered an inguinal hernia requiring surgical repair, among other injuries.  (Id.)

Plaintiffs aver that their injuries resulted from the policies and customs of the West Manchester Township Police Department; its chief, Arthur D. Smith ("Smith"); the York City Police Department; and its commissioner, Mark L. Whitman ("Whitman").  Plaintiffs claim that these defendants failed to adequately screen, hire, supervise, and discipline the officers who arrested them.  (Id. ¶ 75.)  Defendants allegedly encourage their officers to employ arrest tactics that escalate physical confrontation with arrestees, and they fail to discipline officers for use of excessive force.  (Id. ¶ 76.)  The complaint states that defendants inadequately investigate incidents of force, prematurely vindicate officers' actions in such situations, and prepare investigative reports that rely exclusively on police accounts and omit factual information adverse to officers.  (Id. ¶¶ 91(a)-(c); 130(a)-(c).)  Defendants perform no review of incident reports filed by supervising officers to ensure completeness and accuracy.  (Id. ¶¶ 91(d)-(e); 130(d)-(e).)  Finally, the complaint alleges that defendants fail to sanction officers who engage in

4

misconduct and neglect the use of professional tests to determine whether officers demonstrate a propensity toward unnecessary force.  (Id. ¶¶ 94, 97.)

Plaintiffs filed the instant complaint on February 16, 2007.  Plaintiffs allege various infringements of their rights under the federal constitution and the law of the Commonwealth of Pennsylvania.  Defendants West Manchester Township and its police department, chief, and officers (collectively "the West Manchester defendants") have filed a motion to dismiss (Doc. 22) selected claims against them. Defendants City of York, its police department, police commissioner, and fictitiously named officer John Doe (collectively "the York City defendants") have filed a motion to dismiss (Doc. 23) all claims against them on the ground that plaintiff failed to identify the fictitiously named officer within the statute of limitations.  Alternatively, they move to dismiss certain counts of the complaint for failure to state a claim.  Plaintiffs have filed a motion to amend (Doc. 33) their complaint to identify the fictitiously named officer as York City Police Sergeant Nicholas Figge ("Figge").  The parties have fully briefed these issues, which are now ripe for decision.

## II.    <u>Standard of Review</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable

to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Sershen v. Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting Erickson v. Pardus, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  Montville Twp. v. Woodmont Builders LLC, No. 05-4888, 2007 WL 2261567, at *2 (3d Cir. 2007) (quoting Twombly, --- U.S. at ---, 127 S. Ct. at 1969).  Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend

6

their claims before dismissing a complaint that is merely deficient.  <u>See</u> Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d

113, 116-17 (3d Cir. 2000).

## III.   <u>Discussion</u>

The York City defendants' motion requests dismissal because their liability is

conditioned upon the actions of the fictitiously named officer, and is barred by

plaintiffs' failure to identify the officer within the limitations period.  The court will

therefore first address plaintiffs' motion to amend the complaint to add Figge as a

defendant.  The court will thereafter address the York City and West Manchester

defendants' motions to dismiss various counts of the complaint for failure to state a

claim upon which relief can be granted.

### A.   <u>Motion to Amend the Complaint</u>

Rule 15 of the Federal Rules of Civil Procedure governs amendment of

pleadings.  Amendments generally take effect when they are filed.  Hence,

amending a pleading to append a new defendant after expiration of the limitations

period is ineffective unless the amendment relates back to the date that the original

complaint was filed.  An amendment relates back if three conditions imposed by

Rule 15(c) are satisfied.  First, the claim against the new defendant must "ar[i]se out

of the conduct, transaction, or occurrence set out—or attempted to be set out—in

the original pleading."  FED. R. CIV. P. 15(c)(1)(B); <u>see also</u> Singletary v. Pa. Dep't of

Corr., 266 F.3d 186, 194 (3d Cir. 2001.)  Second, the newly identified defendant must,

within 120 days of the filing of the complaint, receive notice of the action such that

he or she will not incur prejudice by defending the suit on the merits. FED. R. CIV. P. 15(c)(1)(C)(I); id. R. 4(m); see Singletary, 266 F.3d at 194; see also Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451, 458 (3d Cir. 1996). Third, "the newly named party must have known, or should have known, (again, within the 120 day period) that 'but for a mistake' made by the plaintiff concerning the newly named party's identity, 'the action would have been brought against' the newly named party in the first place." Singletary, 266 F.3d at 194 (quoting FED. R. CIV. P. 15(c)(1)(C)(ii)).[4] A plaintiff who satisfies these conditions may nevertheless be denied leave to amend under Rule 15(a) if the plaintiff engaged in undue delay when moving to amend. See Arthur v. Maersk, Inc., 434 F.3d 196, 203 (3d Cir. 2006.)

In the case *sub judice*, the claims against Figge arise from the same transaction or occurrence as the claims against the named defendants. All defendants allegedly participated in Donna and Holly's arrest. Plaintiffs have therefore satisfied the first condition for relation back of the amendment to the complaint.

The second condition requires that the newly added defendant receive notice of the action within 120 days after the filing of the original complaint and that the defendant incur no prejudice in defending the suit on the merits. Actual notice is not required, and two methods exist through which a defendant may receive constructive notice sufficient to comply with the requirements of Rule 15(c). Under

---

[4]The language of Rule 15(c)(1)(C)(ii) appeared at Rule 15(c)(3)(B) at the time Singletary was issued.

the shared attorney method, a newly added defendant will be deemed to have notice of a claim if "the originally named party and the party who is sought to be added are represented by the same attorney." Singletary, 266 F.3d at 196. Imputation of notice is appropriate if "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." Id. The plaintiff must demonstrate that the strength of the relationship between the existing defendant's attorney and the new defendant supports an inference that the attorney informed defendant of the claim within the 120-day period prescribed by Rule 15. Garvin v. City of Phila., 354 F.3d 215, 225 (3d Cir. 2003).

Alternatively, the plaintiff may impute notice under the identity of interest method. This method requires "'that the parties [be] so closely related in their business operations or other activities that the institution of an action against one services to provide notice of the litigation to the other.'" Singletary, 266 F.3d at 197 (quoting 6A Charles A. Wright, *et al.*, Federal Practice and Procedure, § 1499, at 146 (2d ed. 1990)). A plaintiff seeking to impute notice from a supervisor to a subordinate under this method must establish "circumstances that permit the inference that notice was actually received" by the subordinate. Singletary, 266 F.3d at 200; Garvin, 354 F.3d at 227.

In the instant case, counsel for the York City defendants entered appearances on behalf of fictitiously named John Doe on March 3 and 15, 2007. (See Docs. 7, 9.) On March 9, 2007, Figge prepared an incident report regarding the Dulls' arrest at the behest of his superiors. (See Doc. 39, Ex. B at 5.) This report,

prepared nearly two years after the arrest, followed the filing of the complaint by a mere one month.  Discovery produced on July 3, 2007, approximately two weeks after expiration of the 120-day period, formally identified Figge as the officer who participated in the arrests.

In light of these facts, the court concludes that notice of plaintiff' claims is be imputed to Figge under the shared attorney method.  One may reasonably assume that counsel for the York City defendants began investigating the identity of the unnamed defendant after they commenced representation on defendants' behalf.  See Parsons v. City of Phila., No. Civ. A. 02-1881, 2002 WL 32341781, at *3 (E.D. Pa. Dec. 12, 2002) (holding that it is reasonable to assume that, upon receiving a complaint against prison officials and unnamed prison guards, officials conducted an investigation to determine the unidentified defendants' identity.)  The complaint identified only one York City police officer at the scene of the arrest; hence, counsel would have had to uncover Figge's identity in order to obtain firsthand information regarding their clients' involvement in the suit.

Figge's report—prepared one month after the filing of the complaint—and counsel's identification of Figge as the responding officer bolster this conclusion.  Figge's completion of the incident report nearly two years after the arrest but in close temporal proximity to the complaint strongly suggests his superiors demanded it for use in the present lawsuit.  Further, the 120-day deadline of Rule 15 expired a mere two weeks prior to the July 3 discovery responses.  Counsel inevitably would have had to consult with Figge about the nature of the lawsuit well

before the expiration of the deadline in order to formulate the discovery disclosures produced on July 3.  Therefore, the court concludes that Figge received notice of plaintiffs' claims within the 120-day period prescribed by Rule 15 and that he received imputed notice of the claim under the shared attorney method.

Imputed notice would likewise be proper under the identity of interest method.  The interests of Figge and the York City defendants are closely aligned because liability of both is dependent on Figge's actions at the arrest scene.  Preparation of the incident report supports an inference that Figge was aware of the suit.  See Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir.2006) (stating that municipal liability requires an underlying violation of constitutional rights, either by the municipality's employees or as a result of its policies and customs).  As discussed *supra*, the evidence of record corroborates Figge's actual notice of the claim within the 120-day period prescribed by Rule 15(c).  Notice may also be imputed to him under the identity of interest method.

The second condition for relation back of amended pleadings requires that the newly added defendant experience no prejudice in responding to the action despite the intervening expiration of limitations period.  Here, the court concludes that Figge is not prejudiced by late joinder because he was informed of the litigation within the 120-day notice period.  See Leary v. Nwosu, No. Civ. A. , 2007 WL 2892641, at *7 (E.D. Pa. Oct. 2, 2007) (finding that newly added defendant would not incur prejudice because the defendant received notice of the claims against it within the 120-day period under Rule 15).  Accordingly, the court finds that the

11

plaintiffs have satisfied the second condition for relation back of amendments to pleadings.

The third and final condition for relation back requires that the newly added party know within the 120-day period that, but for a mistake regarding the identity of the defendant, the suit would have been brought against him or her.  See FED. R. CIV. P. 15(c)(1)(C)(ii).  Suits against fictitious defendants qualify as a mistaken identity for purposes of Rule 15(c).[5]  See Arthur v. Maersk, Inc., 434 F.3d 196, 209 (3d Cir. 2006) (citing Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 174-75 (3d Cir. 1977)) ("An amendment naming a new party will relate back to the original complaint if the party had adequate notice of the action and should have known that it would have been named in the complaint but for a mistake—whether the mistake is based on lack of knowledge or mere misnomer.")  In the present case, plaintiffs' failure to identify Figge in the original complaint derived from their lack of knowledge regarding his identity.  This lack of knowledge qualifies as a "mistake" for purposes of relation back.

_____

[5]The York City defendants have cited a number of cases from other circuits that reach the opposite conclusion.  See, e.g., Garrett v. Fleming, 362 F.3d 692, 696 (10th Cir. 2004) (holding that a plaintiff's lack of knowledge concerning the identity of an opposing party is not a "mistake" for purposes of relation back under Rule 15(c); Worthington v. Wilson, 8 F.3d 1253, 1256-57 (7th Cir. 1993) (same).  The United States Court of Appeals for the Third Circuit has noted this divergence of authority and has reaffirmed that a plaintiff's lack of knowledge regarding a defendant's identity constitutes a "mistake" for purposes of Rule 15(c)(3)(C)(ii).  See Singletary, 266 F.3d at 200-02; see also Arthur, 434 F.3d at 209.

Finally, the York City defendants contend that plaintiffs engaged in undue delay in filing their motion to amend, warranting its denial. A court may deny leave to amend under Rule 15(a) if the plaintiff engages in undue delay and the defendant is prejudiced thereby. In re Merck & Co. v. Sec., Derivative, & ERISA Litig., 493 F.3d 393, 400 (3d Cir. 2007); Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984) (noting that "delay alone . . . is an insufficient ground upon which to deny a motion to amend" and that "the touchstone is whether the non-moving party will be prejudiced if the amendment is allowed"). Here, the York City defendants contend that plaintiffs engaged in undue delay because they received notice of Figge's identity in early July 2007 but waited four months before filing the instant motion to amend. This brief lapse, standing alone, is insufficient to justify denial of the motion to amend. See Riley v. Taylor, 62 F.3d 86, 90-91 (3d Cir. 1995) (holding that a petitioner's six-month delay in filing his motion to amend a petition for writ of habeas corpus was insufficient to justify denial of the motion). Allowing the amendment will not prejudice Figge because he received timely notice of the

plaintiffs' claims.  Accordingly, plaintiffs' motion to amend the complaint to add

York City Police Sergeant Nicholas Figge as a defendant will be granted.[6]

### B.    Section 1983 Claims

Plaintiffs advance claims pursuant to 42 U.S.C. § 1983[7] alleging that all

defendants deprived them of their rights to be free from excessive force and

unreasonable seizure guaranteed by the Fourth and Fourteenth Amendments.

Section 1983 provides protection when official action causes a "deprivation of rights

protected by the Constitution."  Monell v. Dep't of Soc. Svcs., 436 U.S. 658, 690

(1978).  However, § 1983 is not an independent source of substantive rights. Baker v.

McCollan, 443 U.S. 137, 144 n. 3 (1979); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir.

---

[6]The York City defendants move to dismiss all claims against them because liability of the City of York and its police department and commissioner requires proof of a prerequisite violation of plaintiffs' constitutional rights perpetrated by the fictitiously named York City police officer, now known to be Figge.  (See Doc. 23 at 1-3; Doc. 25 at 7-11.)  Without a valid claim against Figge, plaintiffs would be unable to plead a constitutional violation resulting from a policy or custom of the municipal York City defendants, thereby warranting complete dismissal of the action against them.  In light of the disposition of the plaintiffs' motion to amend (Doc. 33), the court will consider this argument no further.

[7]Section 1983 states, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

1996).  Rather, "it provides only remedies for deprivations of rights established

elsewhere in the Constitution or federal laws." Kneipp, 95 F.3d at 1204; see also

Collins v. City of Harker Heights, 503 U.S. 115, 119 (1992) (Section 1983 "does not

provide a remedy for abuses that do not violate federal law.").  In order to establish

a § 1983 claim, a plaintiff must demonstrate, first, the deprivation of a constitutional

right, and, second, that a "person acting under the color of state law" is responsible

for the alleged deprivation.  Kneipp, 95 F.3d at 1204 (internal citations omitted);

Collins, 503 U.S. at 120.

### 1.   Dismissal for Direct Violation of § 1983

Defendants contend that the complaint seeks recovery for substantive

violations of § 1983 rather than for deprivation of constitutional rights and therefore

warrants dismissal.  This argument apparently derives from headings in the

complaint that allege "Violation[s] of 42 U.S.C. § 1983."  (Doc. 1 at  25, 27, 38, 40.)

Semantics notwithstanding, a cursory review of the complaint reveals that plaintiffs

advance claims for infringement of their Fourth and Fourteenth Amendment

rights.  These injuries are actionable via § 1983, which provides an enabling

mechanism for the remedies plaintiffs seek.  See Kopec v. Tate, 190 F. App'x 125,

128 (3d Cir. 2006).  To resolve any ambiguity in the complaint, the court will

construe the § 1983 allegations as demands for relief predicated upon deprivation of

plaintiffs' constitutional rights.  In light of the court's construction, defendants'

motions to dismiss the complaint on this basis will be denied.

## 2.   **Merger of Official Capacity Claims**

Smith, Whitman, and all police officer defendants (collectively "the individual defendants") move to dismiss the § 1983 claims against them in their official capacities.   A suit against a government official in his or her official capacity is synonymous with a claim against the government entity that employs him or her. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. Dep't of Soc. Svcs., 436 U.S. 658, 690 n. 55 (1978)) (stating that suits against officers in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent"); Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988) (reiterating that official-capacity claims are equivalent to claims asserted directly against the government).  Claims asserted against both a government entity and the entity's agents in their official capacity warrant dismissal of the redundant official-capacity suits.  See Johnston v. Dauphin Borough, No. 1:05-CV-1518, 2006 WL 1410766, at *4 (M.D. Pa. May 22, 2006) (granting motion to dismiss official-capacity claims because plaintiff asserted identical claims against municipality); Congregation Kol Ami v. Abington Twp., No. Civ. A. 01-1919, 2004 WL 1837037, at *19 (E.D. Pa.  Aug.17, 2004) ("When a government body can be sued for injunctive and declaratory relief, there is no need to bring official capacity suits against local government officials.").  Therefore, the claims against the individual defendants in their official capacities will be dismissed as duplicative of those against the municipalities.  Leave to amend will be denied as futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

16

### 3.    **Personal Involvement of Smith and Whitman**

Defendants Whitman, Smith,[8] the City of York, and the York City Police

Department move to dismiss the claims against them for lack of personal

involvement.  It is well-established that individual liability in a civil rights action

must be predicated upon the defendant's personal involvement in the deprivation

of civil rights and cannot be imposed upon a governmental official based on a

theory of *respondeat superior*.  See Rizzo v. Goode, 423 U.S. 362, 372-73 (1976);

Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976).  Civil

rights violations levied against supervisory employees require the plaintiff to

> (1) identify the specific supervisory practice or procedure that the
> supervisor failed to employ, and show that (2) the existing custom and
> practice without the identified, absent custom or procedure created an
> unreasonable risk of the ultimate injury, (3) the supervisor was aware
> that this unreasonable risk existed, (4) the supervisor was indifferent
> to the risk; and (5) the underling's violation resulted from the
> supervisor's failure to employ that supervisory practice or procedure.

Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001); Rosenberg v. Vangelo,

93 F. App'x 373, 379 (3d Cir. 2004) (reiterating that deliberate indifference of a

supervisor may subject the supervisor to liability for violation of civil rights by

subordinates).  The supervisor "must either be the 'moving force [behind] the

constitutional violation' or exhibit 'deliberate indifference to the plight of the person

deprived.'"  Waples v. Kearney, No. 03-722, 2005 WL 724175, at *3 (D. Del. Mar. 29,

---

[8]Smith is the only West Manchester defendant who has moved to dismiss the
complaint for lack of personal involvement.  The court will address his argument
simultaneously with similar arguments advanced by the York City defendants.

2005) (quoting Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).  A municipality

may be held liable under § 1983 only if the plaintiff "identif[ies] a municipal 'policy'

or 'custom' that caused the plaintiff's injury."  Colburn v. Upper Darby Twp., 946

F.2d 1017, 1027 (3d Cir. 1991) (citing Monell v. Dep't of Social Svcs., 436 U.S. 658,

694, (1978))

     In the present case, the complaint alleges that Whitman, Smith, the City of

York, and the York City Police Department maintained inadequate systems to

review allegations of excessive use of force by officers within their respective police

departments.  (Doc. 1 ¶ 91.)  They allegedly performed cursory reviews of citizen

complaints, resolving them in a manner that favored the officers' accounts of use-of-

force incidents.  (Id.)  According to the complaint, defendants have also failed to

implement emotional fitness evaluations to determine whether officers have a

propensity to use of excessive force.  (Id. ¶ 97.)  As a result, officers lacked training

on objective standards by which to ascertain appropriate police action and had

unfettered discretion when responding to sensitive situations.  (Id. ¶ 96.)  Whitman

and Smith allegedly knew of and contributed to these policy shortcomings.  (Id. ¶¶

97, 99.)  Plaintiffs contend that Smith, Whitman, and the municipal defendants

could have prevented their injuries by implementing more robust use-of-force

policies and by screening officers for proclivities toward violence.  (Id. ¶¶ 92, 97.)

     The court finds that the complaint successfully avers claims for supervisory

liability against Whitman and Smith arising from their alleged deliberate

indifference to the plight of plaintiffs.[9]  Similarly, plaintiffs have pled a policy,

practice, or custom resulting in the improper use of force sufficient to withstand

dismissal of action.[10]  Accordingly, the motions will be denied.

### 4.   **Fourteenth Amendment Excessive Force Claim**

All defendants move to dismiss the Fourteenth Amendment due process

claims against them on the ground that they improperly duplicate the Fourth

Amendment excessive force claim.  <u>See</u> Graham v. Conner, 490 U.S. 386, 388 (1989)

(holding that excessive force claims are properly analyzed under the Fourth

Amendment reasonableness standard).  The Fourth Amendment protects

individuals from the use of excessive force by government actors performing a

---

[9]Disposition of the motions in this manner is particularly appropriate in light of the Third Circuit's instruction that "in civil rights cases must of the evidence can be developed only through discovery of materials held by defendant officials." Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988), <u>quoted in</u> Alston v. Parker, 363 F.3d 229, 232 (3d Cir. 2004).  Denial of defendants' motions will permit plaintiffs to engage in further discovery regarding the role of Smith and Whitman in the instant matter for the purpose of developing their claims.

[10]The City of York, York City Police Department, and Whitman encourage the court to dismiss the § 1983 claims against them because plaintiffs has advanced mere conclusory legal arguments that their actions caused the alleged injuries. (Doc. 23 at 5.)  They argue that Papasan v. Allain, 478 U.S. 265 (1986), dictates such a result.  In <u>Papasan</u>, the Supreme Court declared that a court evaluating a motion to dismiss is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Id.</u> at 286.  In the instant case, plaintiffs delineate a pattern of conduct by the York City defendants regarding their handling of internal investigations and complaints regarding the use of force.  They also contend that defendants failed to implement screening examinations and other tests to determine officers' ability to exercise appropriate judgment with respect to the use of force.  The court finds that these factual allegations raise a plausible right to relief against the York City defendants warranting denial of the motion.

seizure.  <u>See</u> id.  This protection applies from the point of seizure until the

individual seized becomes a pre-trial detainee.  <u>See</u> Donahue v. Gavin, 380 F.3d 371,

382 (3d Cir. 2002) ("[W]e refer to the Fourth Amendment as applying to those

actions which occur between arrest and pre-trial detention.")  Thereafter, the Due

Process Clause of the Fourteenth Amendment provides continuing protection.  <u>See</u>

James v. York County Police Dep't, 160 F. App'x 126, 131 (3d Cir. 2005).

Courts have encountered difficulty in defining precisely when this transition

occurs.  <u>See, e.g.,</u> United States v. Johnstone, 107 F.3d 200, 207 (3d Cir. 1997)

("Where the seizure ends and pre-trial detention begins is a difficult question.");

<u>Hill v. Algor</u>, 85 F. Supp. 2d (D.N.J. 2000) (collecting cases from various circuit

courts of appeals representative of disagreement regarding when a seizure ends

and pretrial detention begins).  The Fourth Amendment clearly applies to

government conduct during the course of an arrest, and it continues during

transportation of an arrestee to the police station.  <u>See</u> Groman v. Twp. of

Manalapan, 47 F.3d 628, 633-34 (3d Cir. 1995) (analyzing alleged excessive force

used by police to transport arrestee from a police vehicle into the station under the

Fourth Amendment); Bieros v. Nicola, 860 F. Supp. 226, 232 (E.D. Pa. 1994) (same).

Once station house detention ensues, courts have evaluated factors such as the

length of time in custody, whether the arrestee has been transferred out of the

custody of the arresting officers, and whether the arrestee has been arraigned to

determine whether an arrestee's constitutional protections derive from the Fourth

or the Fourteenth Amendment.  <u>See, e.g.</u>, Stephens v. City of Butler, Ala., 509 F. Supp. 2d 1098, 1108-09 (S.D. Ala. 2007).

In the present case, plaintiffs predicate their constitutional claims upon the arrest of Donna and Holly at the mall, their transport to the West Manchester Township police station, and Donna's custodial detention once there.  Clearly, the Fourth Amendment applies to the officers' conduct when arresting and transporting plaintiffs.  The motions to dismiss the Fourteenth Amendment claims will be dismissed as to this conduct.  Leave to amend will be denied as futile.  <u>See</u> Grayson, 293 F.3d at 108.

With respect to Donna's detainment at the police station, the record contains no information regarding its duration, whether the arresting officers retained custody of Donna, or whether she was arraigned.  The record is therefore insufficient to allow the court to determine whether the Fourth or Fourteenth Amendment governs Donna's rights at the police station.  The defendants' motions to dismiss the Fourteenth Amendment claim arising from Donna's detention will be denied to permit the parties to develop the factual circumstances thereof.

**C.    <u>State-Law Claims</u>**

Plaintiffs also maintain various claims arising under state law.  Donna advances claims for negligent infliction of emotional distress, assault, and, battery, and Holly brings claims for false imprisonment and false arrest.  Both plaintiffs demand relief for intentional infliction of emotional distress.

1.   **Negligent Infliction of Emotional Distress**

All defendants move for dismissal of Donna's claims for negligent infliction of emotional distress.  The Pennsylvania Political Subdivision Tort Claims Act grants municipalities categorical immunity for the negligence of their employees except with respect to certain statutorily enumerated negligence claims.  See 42 PA. CONS. STAT. § 8542; Heckensweiler v. McLaughlin, 517 F. Supp. 2d 707, 719 (E.D. Pa. 2007).  Negligent infliction of emotional distress is not among the claims for which liability may attach to a political subdivision.  See 42 PA. CONS. STAT. § 8542(b); Coreia v. Schuylkill County Area Vocational-Technical Sch. Auth., No. 4:CV-04-2425, 2005 WL 2266589, at *11 (M.D. Pa. Sept. 16, 2005).  Defendants West Manchester Township, West Manchester Township Police Department, the City of York and the York City Police Department are therefore immune from suit for negligent infliction of emotional distress allegedly perpetrated by their employees. The motions to dismiss the claim against these defendants will be granted, and leave to amend will be denied as futile.  See Grayson, 293 F.3d at 108.

Municipal employees generally receive immunity for actions within the scope of their employment to the same extent as their municipal employers.  See id. 42 PA. CONS. STAT. § 8545.  An employee's willful misconduct may vitiate this immunity.  See id. § 8550.  Acts of lesser culpability, such as those arising from an employee's negligence or deliberate indifference, have no effect on the employee's immunity.  See Boria v. Bowers, No. Civ. A. 06-4383, 2007 WL 2726338, at *6 (E.D.

Pa. Sept. 17, 2007) ("Mere negligence or deliberate indifference is not sufficient to break through governmental immunity on the grounds of willful misconduct.").

Donna's claim for negligent infliction of emotional distress against the individual defendants arises exclusively from their conduct when arresting and detaining her. Donna alleges that individual defendants committed these actions within the scope of their employment as law enforcement officers. Donna does not allege that any of her injuries resulted from acts by the individual defendants committed outside the scope of their law enforcement duties. The motions to dismiss the claim for negligent infliction of emotional distress will therefore be granted because the individual defendants possess immunity from suit. Leave to amend will be denied as futile to the extent that Donna contends the individual defendants acted negligently while performing their law enforcement duties. Donna will be granted leave to amend the complaint to allege negligent actions by the individual defendants performed outside the scope of their employment that caused her to suffer emotional distress.[11]

---

[11]Donna predicates her claim for negligent infliction of emotional distress against Smith and Whitman on the activities of the arresting officers whom they supervised. Municipal supervisors possess immunity for the acts of their subordinates to the same extent as municipal employers. See 42 Pa. Cons. Stat. § 8545. Accordingly, the negligence claims against Smith and Whitman will be dismissed. Plaintiffs will be permitted to amend the complaint to allege negligent activity outside the scope of their employment that result in the alleged emotional distress.

## 2.   **Intentional Tort Claims**

Defendants City of York and York City Police Department request dismissal of Donna and Holly's intentional tort claims[12] against them on the ground that they lack personal involvement in the allegedly tortious conduct.  It is axiomatic that a tort claim requires proof that a defendant's action caused the plaintiff's injury.  See, e.g., Brown v. City of Phila., No. Civ. A. 07-0192, 2008 WL 269495, at *12 (E.D. Pa. Jan. 29, 2008) (quoting Lakits v. York, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003)) ("'To prove [a] claim of battery, [a] [p]laintiff must establish that a particular [d]efendant intended to cause a harmful or offensive contact to [p]laintiff, or an imminent apprehension of such contact in [p]laintiff, and that such contact with [p]laintiff resulted.'" (alterations in original)).  A plaintiff's failure to allege causation renders an intentional tort claim ineffective.

In the present case, plaintiffs allege that their tortious injuries occurred entirely through the actions of the arresting officers.  They do not contend that the York City municipal defendants engaged in any action that caused the torts of which they complain.  Accordingly, the court will grant the motion to dismiss these claims for lack of causation.

None of the parties have addressed whether the moving defendants are subject to vicarious liability for the tortious acts of their employees or subordinates.

---

[12]Donna advances claims for assault and battery, and Holly seeks recovery for false imprisonment and false arrest.  Both plaintiffs maintain a claim for intentional infliction of emotional distress.

Nevertheless, municipalities possess complete immunity from claims predicated upon the intentional misconduct of their employees.  See 42 PA. CONS. STAT. § 8542(a).  Any attempt to amend the complaint to assert an intentional tort claim against the moving defendants would therefore be futile, and leave to amend will be denied.[13, 14]  See Grayson, 293 F.3d at 108.

## IV.   **Conclusion**

Plaintiffs' motion to amend (Doc. 33) the complaint to replace the police officer fictitiously named as John Doe with Figge will be granted.  The motions to dismiss (Docs. 22, 23) will be granted except to the extent that they seek dismissal

---

[13]Whitman also moves to dismiss the intentional tort claims against him, and the motion to dismiss these claims will be granted for the same reasons that warrant dismissal of the claims against the York City municipal defendants. Plaintiffs will be granted leave to amend to allege conduct by Whitman that both caused these injuries and fell outside the parameters of his statutory immunity.  See 42 PA. CONS. STAT. § 4550 (providing that a municipal employee has no immunity for acts that "constitue[] a crime, actual fraud, actual malice, or willful misconduct").

[14]Defendants have moved to dismiss several additional claims, which plaintiffs do not contest.  First, defendant municipalities seek dismissal of plaintiffs' demand for punitive damages against them because such damages cannot be recovered from municipal entities under either § 1983 or Pennsylvania law.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267-68 (1981); 42 PA. CONS. STAT. § 8553(c); Marko by Marko v. City of Phila., 576 A.2d 1193, 1194 (Pa. Commw. Ct. 1990).  Second, all defendants move to dismiss the claims for money damages under the Constitution of the Commonwealth of Pennsylvania because it creates no private right of action.  See R.H.S. v. Allegheny County Dep't of Human Svcs., 936 A.2d 1218, 1226 (Pa. Commw. Ct. 2007).  These claims will therefore be dismissed.
Defendants lastly contend that plaintiffs' demand for recovery in excess of $200,000 is inappropriate under Local Rule 8.1.  (See Doc. 1 at 50.)  That rule prohibits demands for "any specific sum where unliquidated damages are involved."  L.R. 8.1.  Plaintiffs acknowledge that the demand is improper, and the court will therefore strike it from the complaint.

for purported lack of personal involvement of Smith, Whitman, the City of York,

and its police department.  The motions will also be denied with respect to all

claims asserted directly under § 1983 and to the Fourteenth Amendment claim

arising from Donna's detention at the police station.

    An appropriate order will issue.

                                                  S/ Christopher C. Conner
                                                  CHRISTOPHER C. CONNER
                                                  United States District Judge


Dated: March 17, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNA L. DULL and** | : | **CIVIL ACTION NO. 1:07-CV-0307** |
| **HOLLY DULL,** | : | |
| | : | **(Judge Conner)** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **WEST MANCHESTER TOWNSHIP** | : | |
| **POLICE DEPARTMENT, WEST** | : | |
| **MANCHESTER TOWNSHIP,** | : | |
| **ARTHUR D. SMITH, JR., SEAN** | : | |
| **CONWAY, PETER HAINES, DAVID** | : | |
| **KELLER, DAVID BIXLER, STEVEN** | : | |
| **CRIDER, YORK CITY POLICE** | : | |
| **DEPARTMENT, CITY OF YORK,** | : | |
| **MARK L. WHITMAN and JOHN DOE,** | : | |
| | : | |
| Defendants | : | |

## ORDER

AND NOW, this 17th day of March, 2008, upon consideration of the motion

to amend the complaint (Doc. 33) and motions to dismiss (Docs. 22, 23), and for the

reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.  The motion to amend (Doc. 33) the complaint is GRANTED. Plaintiffs
    are instructed to file and effectuate service of an amended complaint
    in accordance with Rule 4 of the Federal Rules of Civil Procedure on
    or before April 11, 2008. <u>See</u> L.R. 15.1(a).

2.  The clerk of court is instructed to TERMINATE defendant John Doe.

3.      The motion to dismiss (Doc. 22) of defendants West Manchester
        Township and West Manchester Township Police Department
        (collectively "the West Manchester municipal defendants"); and of
        Sean Conway, Peter Haines, David Keller, David Bixler, Steven
        Crider, and Arthur Smith (collectively "the West Manchester
        individual defendants") is GRANTED in part and DENIED in part as
        follows:

        a.      The motion is GRANTED with respect to:

                i.      The claims brought pursuant to 42 U.S.C. § 1983 against
                        the West Manchester individual defendants in their
                        official capacities,

                ii.     The Fourteenth Amendment excessive force claim of
                        plaintiff Donna Dull insofar as it arises from her arrest
                        and transportation to the police station,

                iii.    The claim for punitive damages against the West
                        Manchester municipal defendants,

                iv.     The claim for negligent infliction of emotional distress
                        against the West Manchester municipal defendants, and

                v.      The claim for money damages under the Constitution of
                        the Commonwealth of Pennsylvania.

                Leave to amend these claims is denied as futile.  Grayson v.
                Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

        b.      The motion is further GRANTED with respect to plaintiff Donna
                Dull's claim for negligent infliction of emotional distress against
                the West Manchester individual defendants.  Plaintiffs shall be
                permitted to file an amended complaint on or before April 11,
                2008.  Any amended pleading shall comply in all respects with
                Local Rule 15.1.

        c.      The motion is otherwise DENIED.

4.     The motion to dismiss (Doc. 23) of defendants York City Police
       Department and the City of York (collectively "the York City municipal
       defendants") and of Mark L. Whitman and John Doe (collectively "the
       York City individual defendants") is GRANTED in part and DENIED
       in part as follows:

       a.     The Motion is GRANTED with respect to:

              i.     The claims brought pursuant to 42 U.S.C. § 1983 against
                     the York City individual defendants in their official
                     capacities,

              ii.    The Fourteenth Amendment excessive force claim of
                     plaintiff Donna Dull insofar as it arises from defendants'
                     conduct when arresting and transporting her to the police
                     station,

              iii.   The claim for punitive damages against the York City
                     municipal defendants,

              iv.    The claims for negligent infliction of emotional distress,
                     intentional infliction of emotional distress, assault,
                     battery, false imprisonment, and unlawful arrest the York
                     City municipal defendants, and

              v.     The claim for money damages under the Constitution of
                     the Commonwealth of Pennsylvania.

              Leave to amend these claims will be denied as futile.  Grayson,
              293 F.3d at 108.

       b.     The motion is further GRANTED with respect to the claim for
              negligent infliction of emotional distress against the York City
              individual defendants and with respect to the claims for
              intentional infliction of emotional distress, assault, battery, false
              imprisonment, and unlawful arrest against Mark Whitman.
              Plaintiffs shall be permitted to file an amended complaint on or
              before April 11, 2008.  Any amended pleading shall comply in all
              respects with Local Rule 15.1.

       c.     The motion is otherwise DENIED.

3

5.     Plaintiffs' demand for recovery of sums in excess of $200,000 appearing
       on page 50 of their complaint (Doc. 1) is STRICKEN.  <u>See</u> L.R. 8.1.


                                        <u> S/ Christopher C. Conner  </u>
                                        CHRISTOPHER C. CONNER
                                        United States District Judge