## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONNA DULL and HOLLY DULL,** | : | **CIVIL ACTION NO. 1:07-CV-0307** |
| | : | |
| **Plaintiffs** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **WEST MANCHESTER TOWNSHIP** | : | |
| **POLICE DEPARTMENT, WEST** | : | |
| **MANCHESTER TOWNSHIP,** | : | |
| **ARTHUR D. SMITH, JR.,** | : | |
| **SEAN CONWAY, PETER HAINES,** | : | |
| **DAVID KELLER, DAVID BIXLER,** | : | |
| **STEVEN CRIDER, YORK CITY** | : | |
| **POLICE DEPARTMENT, CITY OF** | : | |
| **YORK, MARK L. WHITMAN, and** | : | |
| **NICHOLAS FIGGE,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Donna Dull brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants used excessive force to effectuate her arrest in spring 2005. Her daughter, plaintiff Holly Dull, who was arrested at the same time, advances § 1983 claims for unlawful arrest and unlawful imprisonment. Plaintiffs also maintain claims for municipal and supervisory liability and seek redress under state tort law. Defendants have filed a motion for summary judgment (Doc. 30). For the reasons that follow, the motion will be granted in part and denied in part.

I.   **Statement of Facts**[1]

This case originates with certain indiscreet photographs that plaintiff Donna Dull ("Donna") took of her four-year-old granddaughter, H.D., who is the daughter of plaintiff Holly Dull ("Holly").  (Doc. 72 ¶ 4; Doc. 82 ¶ 4.)  Donna, Holly, and H.D. live in the same residence, and Donna participates in the care and upbringing of H.D.  (See, e.g., Doc. 72 ¶¶ 3-4; Doc. 82 ¶¶ 3-4; Doc. 83, Ex. A at 19-22.)

A.   **Donna's Arrest**

On March 13, 2005, Donna left the film containing the suspect photos at a Wal-Mart store located in the West Manchester Mall in York, Pennsylvania, to be developed.  (Doc. 72 ¶ 24; Doc. 82 ¶ 24.)  Donna had taken the photographs while undressing H.D. for a bath, and they consequently depicted H.D. in ten nude poses.  (Doc. 74, Ex. 15; Doc. 83, Ex. A at 21-22.)  H.D. is smiling in most of the photographs, and her chest and buttocks are visible in several of them.  (Doc. 74, Ex. 15; Doc. 83, Ex. A at 34-38; Doc. 83, Ex. B at 55-67.)  Her genitalia can be also be seen in one of the photos.  (Doc. 74, Ex. 15; Doc. 83, Ex. A at 37-38; Doc. 83, Ex. B at 65-66.)  Donna

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiffs, the nonmoving parties.  See infra Part II.

contends that she took the photographs for H.D.'s childhood photo album, (Doc. 83, Ex. A at 18), and the record contains no evidence of predatory intent.[2]

Donna and Holly returned to the mall the following day, and Donna retrieved her prints while Holly went to a fast-food restaurant for lunch. (Doc. 83, Ex. B at 33-34.) A Wal-Mart employee informed Donna that the photo center staff had questioned the propriety of the photographs and had turned them over to defendant West Manchester Township Police Department. (Doc. 72 ¶ 25; Doc. 82 ¶ 25; Doc. 83, Ex. A at 41-42.) Donna was told to contact the police to resolve the situation. (Doc. 83, Ex. A at 42.)

Donna then left Wal-Mart and purchased a sandwich, which she took to her car. (Doc. 72 ¶¶ 28-29; Doc. 82 ¶¶ 28-29.) In the interim, a Wal-Mart staff member contacted the police, and defendants West Manchester Township Police Officer

---

[2]The record overwhelmingly demonstrates that Donna acted without pernicious intent. Donna described her household as a "photographic family," stating that "we have cameras everywhere we go." (Doc. 83, Ex. A at 29.) She has several childhood photo albums that include nude snapshots of herself as an infant and toddler, and she compiled similar childhood scrapbooks for her two daughters, Holly and Tiffany, who is not a party to this matter. (Id. at 17-18, 29.) Holly testified that she possesses at least three or four such albums and that H.D. currently has four or five. (Doc. 83, Ex. B at 24-25, 72.) H.D. frequently requests that family members take her picture, and Donna has photographed her at least once a week since her birth. (Doc. 83, Ex. A at 18; Doc. 83, Ex. B at 23.)

Upon discovery of the photos, police initially charged Donna with exploitation of children. However, the district attorney eventually dropped the charges due to a lack of evidence establishing criminal intent. (Doc. 74, Ex. 14 ¶ 6.) During a state court hearing on February 16, 2006, the district attorney stated that "it was inappropriate that the charges [were] filed." (Doc. 74, Ex. 17.) On June 21, 2006, he further advised the state court that York County Children and Youth Services had investigated the matter and concluded that H.D. was "in safety within the confines of [Donna's] home." (Doc. 41 at 7; see also Doc. 47, Ex. D at 4.)

Sean Conway ("Conway") and York City Police Sergeant Nicholas Figge ("Figge") were dispatched to the mall.[3]  (Doc. 74, Ex. 3 at 15; Doc. 74, Ex. 8 at 8.)  The officers located Donna's vehicle, found it unoccupied, and withdrew to a position from which they surveiled the car.  (Doc. 74, Ex. 3 at 16; Doc. 74, Ex. 8 at 9.)  Donna soon emerged from the mall and entered her vehicle, where she began to eat the sandwich.  (Doc. 72 ¶ 29; Doc. 82 ¶ 29.)  The officers approached Donna to take her into custody, and Conway blocked her vehicle's egress with his police cruiser.  (Doc. 83, Ex. A at 55.)  Conway approached Donna's vehicle, opened the door, and instructed her twice to exit the car.  (Id. at 14-15, 54, 57-60; Doc. 72 ¶¶ 31-32; Doc. 82 ¶¶ 31-32.)

Donna stepped out of the car, and Conway rotated her body so that she was facing a sport utility vehicle parked in the next space.  (Doc. 83, Ex. A at 15.)  From this position, he grasped her wrists and prepared to handcuff her.  (Id. at 15, 65-67.)  She testified that this maneuver caused her to experience considerable pain in one of her fingers, which was swollen due to arthritis.  (Id. at 15, 68.)  She stated that Conway "was rough" and that he "was just really twisting" her afflicted finger.  (Id. at 68.)  In response, she said either, "Don't do that," or asked, "[W]hat are you doing?"  (Id.)  She also "tried to twist to the right to look at him," but he immediately turned her back toward the SUV and placed her in handcuffs.  (Id. at

---

[3]The mall is within the jurisdiction of the West Manchester Township Police. Figge responded to the call because he was assisting the West Manchester Police with investigation of a nearby bank robbery.  (Doc. 74, Ex. 8 at 7.)  When the call came in, he left the robbery investigation to aid Conway.  (Id.)

69-71, 229.)  After Conway restrained her, she was slammed with great force into the side of the SUV.  (Id. at 15, 71, 80, 229.)  As a result of the blow, she sustained nerve damage in her lower back and experienced neck pain, which has persisted since the incident.  (Doc. 83, Ex. C at 5-6.)

Donna could not identify the officer who forced her against the SUV because the conduct occurred with the officers at her back.  (Doc. 83, Ex. A at 75-76, 80).  Conway was the only officer she saw during the arrest, and she first noticed Figge after being pushed against the SUV.  (Id. at 62-63.)  Conway testified that the force he used to handcuff Donna would likely have pressed her body against the neighboring vehicle.  (Doc. 74, Ex. 3 at 19.)  He could not recall whether Figge assisted with the arrest, (id.); however, Donna was eventually transported to the West Manchester Township police station, where an unidentified individual informed her that a York City officer was responsible for the shove.  (Doc. 83, Ex. A at 76.)  Figge was the only York City officer who responded to the incident.  Figge could not remember whether he aided Conway, but he recounted that a privately employed mall security officer was present at the arrest and may have provided assistance.  (Doc. 74, Ex. 8 at 10-11.)  Conway and Donna recalled no such individual being present.  (Doc. 74, Ex. 3 at 20; Doc. 83, Ex. A at 62-63.)

## B.   Holly's Arrest

Defendants West Manchester Township Police Sergeant Peter Haines ("Haines"), and Officer David Keller ("Keller") arrived at the scene after Donna was placed in the rear of Conway's police cruiser.  (Doc. 72 ¶ 47; Doc. 82 ¶ 47; see also

Doc. 74, Ex. 3 at 23; Doc. 74, Ex. 4 at 17; Doc. 74, Ex. 7 at 9.)  Keller immediately

departed after learning that Donna was already in custody.  (Doc. 72 ¶ 47; Doc. 82

¶ 47; <u>see also</u> Doc. 74, Ex. 7 at 9.)  Conway and Figge were briefing Haines on the

situation when Holly, who had since exited the mall, approached the officers.

(Doc. 72 ¶¶ 61-62; Doc. 74, Ex. 4 at 17; Doc. 82 ¶¶ 61-62.)  Haines initially instructed

her to move away but relented when she informed him that Donna was her mother.

(Doc. 72 ¶¶ 63-64; Doc. 82 ¶¶ 63-64.)  Haines was unfamiliar with the details of

Donna's case and radioed defendant West Manchester Township Police Detective

David Bixler ("Bixler"), who was acquainted with the case file, to ask whether to

arrest Holly.  (Doc. 74, Ex. 4 at 18; Doc. 74, Ex. 5 at 7-8.)  Bixler, who was then

investigating a recent bank robbery, stated that Haines should "have her come back

to the station to be interviewed."  (Doc. 74, Ex. 5 at 8-9.)  Haines apparently

interpreted this as a request that Holly be taken into custody because he placed her

in a police vehicle and apprised her of her rights under <u>Miranda v. Arizona</u>, 384

U.S. 436 (1966).  (Doc. 74, Ex. 4 at 18; Doc. 83, Ex. B at 128.)  Holly was not placed in

handcuffs.  (Doc. 83, Ex. B at 117.)

> **C.    <u>Plaintiffs' Detention and Citizen Complaint</u>**

Defendants transported Donna and Holly to the West Manchester Township

police station in different vehicles.  (Doc. 72 ¶¶ 70, 81; Doc. 82 ¶¶ 70, 81; Doc. 83, Ex.

B at 138.)  At the station, Donna remained handcuffed and complained to Conway

that the restraints felt excessively tight.  (Doc. 83, Ex. A at 111-112.)  Conway

checked the cuffs, informed Donna that they were applied correctly, and refused to

loosen them.  (Id. at 112.)  Conway eventually removed the cuffs for Donna to use

the restroom, and he replaced them with leg shackles when she returned.  (Id. at

112-13.)  Holly was never confined in any way.  (Doc. 83, Ex. B at 165-66.)  Both

Donna and Holly were later released.

Following the arrest, Donna scheduled an appointment with defendant West

Manchester Township Police Officer Steven Crider ("Crider") to file a citizen's

complaint regarding the force used to apprehend her.  (Doc. 74, Ex. 6 at 9; Doc. 83,

Ex. A at 84-85.)  Crider was otherwise uninvolved in her arrest.  (Doc. 72 ¶ 47; Doc.

82 ¶ 47.)  The current record does not describe the outcome of this complaint.  West

Manchester police filed a criminal complaint against Donna on June 17, 2005

charging her with exploitation of children.  (Doc. 74, Ex. 16.)  The district attorney

dismissed all charges on June 21, 2006 due to a lack of evidence establishing

criminal intent.  (Doc. 74, Ex. 14 ¶¶ 6, 12.)

### D.   Procedural History

Plaintiffs commenced the instant suit on February 16, 2007, alleging

violations of their constitutional rights under § 1983 and advancing various tort

claims under state law.  Defendants have filed a motion for summary judgment

(Doc. 71) asserting that plaintiffs have failed to produce sufficient evidence to

support their claims and that, alternatively, qualified immunity shields them from

suit.  The parties have fully briefed these issues, which are now ripe for disposition.

## II.   <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III.   <u>Discussion</u>

Donna and Holly advance § 1983 claims for excessive force, unlawful arrest, and unlawful imprisonment against Conway, Figge, Haines, Keller, Bixler, and Crider (hereinafter collectively "the individual defendants").  They also maintain state tort claims for assault, battery, false arrest, false imprisonment, and intentional infliction of emotional distress.

A.    **Claims under 42 U.S.C. § 1983**

Section 1983 of Title 42 of the United States Code offers private citizens a

means to redress violations of federal law by state officials. See 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method to

vindicate violations of federal law committed by state actors. Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under this section, the plaintiff

must show a deprivation of a "right secured by the Constitution and the laws of the

United States . . . by a person acting under color of state law."[4] Id. (quoting Mark v.

Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Satisfaction of these elements, however, does not guarantee recovery.

Certain officials, including police officers and other state actors performing

"discretionary functions," are shielded from suit if their conduct did not violate a

"clearly established statutory or constitutional right[] of which a reasonable person

would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v.

Callahan, --- U.S. ---, 129 S. Ct. 808, 815 (2009). This doctrine, known as "qualified

---

[4]Defendants apparently concede for purposes of the instant motion that they
were acting under color of state law at all times relevant hereto.

immunity," provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

Application of qualified immunity implicates two distinct inquiries. The first inquiry evaluates whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 129 S. Ct. 808; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not commit a constitutional infraction, the court must dispose of the claim in defendant's favor. Saucier, 533 U.S. at 201. However, if the defendant committed a constitutional violation, the second inquiry assesses whether the right in question was "clearly established" at the time the defendant acted. Pearson, 129 S. Ct. at 815-16; Saucier, 533 U.S. 201-02. A right is "clearly established" if a reasonable state actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates. Pearson, 129 S. Ct. at 815-16; Williams, 455 F.3d at 191. Hence, a defendant may not invoke qualified immunity if the defendant's conduct diverges from that of a reasonable state actor under the circumstances. Williams, 455 F.3d at 191. The court is not required to conduct these inquiries sequentially. Pearson, 129 S. Ct. at 820. The court may eschew difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were *clearly established* at the time the defendant acted. Id.

However, if the court chooses to address the alleged constitutional violations,
analysis of the merits for purposes of summary judgment merges with analysis of
the deprivation of federal rights for purposes of qualified immunity.  See Gruenke v.
Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Russoli v. Salisbury Twp., 126 F. Supp. 2d
821, 838-41 (E.D. Pa. 2000); see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d
Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a
careful examination of the record . . . to establish . . . a detailed factual description
of the actions of each individual defendant (viewed in a light most favorable to the
plaintiff).").

Proceeding under the above principles, the court will consider each of
plaintiffs' § 1983 claims to determine, first, whether they have offered prima facie
evidence of their federal claims and, second, whether defendants enjoy qualified
immunity on those claims for which plaintiffs have presented sufficient evidence.

### 1.   Prima Facie Evidence of Plaintiffs' Claims

Donna advances a claim for excessive force against all the individual
defendants, and Holly maintains that the same defendants violated her right to be
free from unlawful arrest and unlawful imprisonment.  The court will evaluate each
of these claims in turn.

### a.   Donna's Claim for Excessive Force

Every citizen has a Fourth Amendment right to be free from excessive force
during lawful arrests.  See Kopec v. Tate, 361 F.3d 772, 776-78 (3d Cir. 2004).  To
avoid running afoul of the Fourth Amendment, an officer may exercise only an

"objectively reasonable" degree of force in effectuating an arrest.[5]  <u>Id.</u>  In

determining whether an officer's conduct was reasonable, a court must review all of

the circumstances surrounding the arrest, including:  (1) the severity of the crime,

(2) the immediate threat that the suspect posed to the officers' safety, (3) whether

the suspect was actively resisting the arrest, and (4) the number of suspects with

whom the officers had to contend at one time.  <u>Couden v. Duffy</u>, 446 F.3d 483, 496-97

(3d Cir. 2006).  "In evaluating reasonableness, the court must take into

consideration the fact that police officers are often forced to make split-second

judgments—in circumstances that are tense, uncertain, and rapidly evolving—

about the amount of force that is necessary in a particular situation."  <u>Id.</u> at 496-97

(quotation marks and citation omitted); <u>see also</u> <u>Graham v. Connor</u>, 490 U.S. 386,

396 (1989).  "Not every push or shove, even if it may later seem unnecessary in the

peace of a judge's chambers, violates the Fourth Amendment."  <u>Graham</u>, 490 U.S. at

396 (internal quotations and citation omitted).

    An officer is liable for force that the officer personally exerts as well as for

force that others inflict in his or her presence.  <u>Smith v. Mensinger</u>, 293 F.3d 641,

650 (3d Cir. 2002).  Liability for failure to intervene requires the plaintiff to establish

---

[5]Generally, the issue of reasonableness is a question of fact reserved for the jury; however, summary judgment may be entered if the court "resolves all factual disputes in favor of the plaintiff and concludes that the use of force was objectively reasonable under the circumstances."  <u>Gravely v. Speranza</u>, 219 F. App'x 213, 215 (3d Cir. 2007).

that the officer had a "realistic and reasonable opportunity" to assuage the constitutional violation but failed to do so.  Id. at 651.

In the case *sub judice*, Donna advances an excessive force claim against all the individual defendants based upon the force used to apprehend her.[6]  It is undisputed that Conway and Figge were the only defendants present at the time of her arrest.  Summary judgment will therefore be granted in favor of Haines, Bixler, Keller, and Crider on the excessive force claim.

Donna has proffered evidence that Conway bore primary responsibility for taking her into custody, and he concedes that the pressure he exerted could have pressed her body against the SUV.  (Doc. 74, Ex. 3 at 19.)  She has also demonstrated that Figge was present during the arrest, aware of Conway's attempts to place her into custody, and close enough to assist Conway's efforts.  However, the details of her arrest remain obscured by factual disputes.  For example, defendants assert that Donna resisted arrest; Donna claims that she cooperated, though she tried to prevent defendants from twisting her hand. Figge recalled that a mall security officer assisted with the arrest, but Conway and Donna remembered no such individual.  The degree of force that Conway applied and Figge's attempts to assist or intervene in the arrest are likewise unclear from the

---

[6]Defendants have propounded much argument dedicated to establishing probable cause for Donna's arrest.  (Doc. 73 at 4-8.)  However, the amended complaint (Doc. 57) does not allege that defendants lacked probable cause for the arrest, nor does plaintiffs' brief in opposition suggest that Donna contests this point. In any event, the photographs of H.D. clearly gave defendants probable cause to arrest Donna.

present record.  The reasonableness of defendants' actions cannot be evaluated

without resolution of these factual issues.  The motion for summary judgment will

be denied with respect to Conway and Figge.[7]

### b.  Holly's Claim for Unlawful Arrest and Unlawful Imprisonment

Claims of unlawful arrest and unlawful imprisonment under the Fourth

Amendment require the plaintiff to show that he or she was arrested without

probable cause.  Groman v. Twp. of Manalapan, 47 F.3d 628, 634-35 (3d Cir. 1995);

see also Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000).  Probable

cause to arrest requires "proof of facts and circumstances that would convince a

reasonable, honest" officer that the person arrested has committed a crime.  Lippay

---

[7]Defendants assert that they are entitled to summary judgment because
Donna lacks sufficient evidence to establish which defendant forced her against the
SUV.  Defendants argue that Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997) and
Taylor v. Brockenbrough, No. Civ.A. 98-6419, 2001 WL 1632146 (E.D. Pa. Dec. 20,
2001) therefore compel summary judgment in their favor.  In Sharrar, the plaintiff
was arrested during a police operation designed to apprehend the residents of an
apartment he was visiting.  128 F.3d at 815-16.  Numerous officers participated in
the exercise, and the plaintiff was unable to identify which particular officers
arrested him.  Id. at 821.  Similarly, in Taylor, the plaintiff was allegedly stopped by
two officers, one of whom knocked him to the ground and struck him repeatedly.
2001 WL 1632146, at *1.  The plaintiff deposed neither officer and proffered no
evidence to establish which individual caused his injuries.  Id. at *2.  In the instant
matter, Donna has made a greater evidentiary proffer than the plaintiffs in Sharrar
and Taylor.  She has identified with particularity both of the officers involved in her
arrest and has alleged that Conway twisted her hand while restraining her.
Conway testified that the force he used could have pressed her against the SUV,
and she has established that Figge was present at the time of the arrest and could
have either participated or intervened in Conway's efforts.  Such allegations
overcome the evidentiary deficiencies described in Sharrar and Taylor and are
sufficient to place Donna's excessive force claim before a jury.

v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993); see United States v. Myers, 308 F.3d

251, 255 (3d Cir. 2002).  Thus, the issue is not whether an individual actually

committed the crimes for which he or she was arrested, but whether the police had

probable cause to believe that the individual committed those crimes at the time of

his or her arrest.  Groman, 47 F.3d at 634; see also Baker v. McCollan, 443 U.S. 137,

145 (1979) ("The Constitution does not guarantee that only the guilty will be

arrested.  If it did, § 1983 would provide a cause of action for every defendant

acquitted—indeed, for every suspect released.").  An individual's mere proximity to

another person whom police suspect of criminal conduct is insufficient to establish

probable cause for an arrest.  Ybarra v. Illinois, 444 U.S. 85, 91 (1979); O'Conner v.

City of Phila., 233 F. App'x 161, 166 (3d Cir. 2007).  An officer may effectuate an

arrest based upon the representations of other officers if the statements are

supported by actual facts sufficient to confer probable cause for the seizure.  Rogers

v. Powell, 120 F.3d 446, 453 (3d Cir. 1997) (concluding that an officer cannot garner

probable cause from the statements of officers who could lawfully arrest a suspect);

see also Holmes v. McGuigan, 184 F. App'x 149, 151 (3d Cir. 2006).

       In the present case, Holly's arrest appears to be the consequence of a

misunderstanding between Haines and Bixler.  Upon learning Holly's identity,

Haines radioed Bixler and "specifically asked a question if he would like the

daughter taken into custody."  (Doc. 74, Ex. 4 at 18.)  Bixler, who was investigating a

bank robbery at the time Haines called, could not remember his precise response

but testified that he instructed Haines to "have her go back to the station, because

15

her daughter was technically a victim . . . at that point." (Doc. 74, Ex. 5 at 8-9.) His "intentions were to have her come back to the station to be interviewed" but not for her to be arrested. (<u>Id.</u> at 9.) Haines confirmed that Bixler "requested that we take [Holly] . . . back to the station," but he mistakenly interpreted Bixler's statement as an instruction to arrest Holly. (<u>Id.</u>)

Holly, however, did not take the photographs of H.D., appear in them, or accompany Donna to drop off the film or pick up the prints. Bixler's communication with Haines cannot provide probable cause for Holly's arrest because it was not supported by actual facts supporting an inference that she engaged in criminal activity. Holly's arrest appears to be the unprovidential product of her propinquity to Donna and miscommunication between police officers. A reasonable jury confronted with this evidence could conclude that Haines and Bixler acted in a manner that produced Holly's unconstitutional arrest. Hence, Holly has stated a prima facie case of unlawful arrest and unlawful imprisonment against Bixler and Haines.

Unlike these defendants, Crider, Keller, Figge, and Conway did not participate in the arrest and bear no responsibility for this constitutional deprivation. Summary judgment will be entered in their favor on Holly's § 1983 unlawful arrest and unlawful imprisonment claims.

### 2.    <u>Clearly Established Rights</u>

Based on the court's findings that plaintiffs have established prima facie claims of excessive force, unlawful arrest, and unlawful imprisonment, the court

must determine whether Conway, Figge, Haines, and Bixler are entitled to qualified immunity.  To determine whether a police officer enjoys qualified immunity, the court must ascertain whether the officer violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  Wright v. City of Phila., 409 F.3d 595, 599-600 (3d Cir. 2005).  The immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Blackhawk v. Pennsylvania, 381 F.3d 202, 215 (3d Cir. 2004) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  This requires an examination of whether, taking the evidence in the light most favorable to the plaintiff, the defendant should have known that his or her actions contravened statutory or constitutional guarantees.  Gruenke, 225 F.3d at 299-300.  Application of immunity is appropriate unless the unlawfulness of defendant's conduct is apparent based upon the law as it existed at the time of defendant's actions.  Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted).  When the issue of qualified immunity requires resolution of factual disputes, the court must defer consideration of immunity until the factual issues are resolved by a jury.  Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).

### a.   Donna's Claim for Excessive Force

The court finds that disputed issues of fact prevent application of qualified immunity to Conway and Figge at this juncture.  The court cannot assess the reasonableness of their actions without ascertaining whether Conway twisted Donna's hand, whether he could have reasonably perceived her attempts to prevent him from doing so as resistance to arrest, and whether she was shoved into the SUV

17

with an inordinate degree of force.  Also unresolved is whether Figge aided in

Donna's arrest, participated in the alleged use of excessive force, or could have

intervened to prevent others from inflicting it.  Accordingly, the Rule 56 motion

asserting qualified immunity will be denied with respect to Donna's excessive force

claim.

### b.    Holly's Claim for Unlawful Arrest and Unlawful Imprisonment

Haines and Bixler are entitled to qualified immunity for their actions.

Officers are entitled to qualified immunity when they reasonably rely on the

representations of other officers to conclude that probable cause existed for an

arrest.[8]  See Myers v. Med. Ctr. of Del., Inc., 105 F. App'x 403, 410 (3d Cir. 2004)

(citing Sharrar v. Felsing, 128 F.3d 810, 827-28 (3d Cir. 1997), abrogation on other

grounds recognized by Curley, 499 F.3d 199).  Haines arrested Holly after asking

Bixler whether she should be taken into custody.  Bixler was at the scene of a bank

robbery at the time Haines called and responded that Haines should take her to the

station.  Bixler did not intend that Haines arrest her, and neither officer recalled

Bixler giving an express instruction to do so.  Haines simply misunderstood his

intentions.  Plaintiffs do not dispute the content of this conversation, nor have they

---

[8]In this manner, the qualified immunity analysis differs significantly from the inquiry that governs substantive rights.  While probable cause for an arrest cannot arise from an officer's erroneous statements to fellow officers, those who reasonably rely on inaccurate representations are nevertheless entitled to qualified immunity. The immunity thus prevents the inequitable situation that would result if an officer were held liable for reasonably relying on statements whose accuracy he or she has no expedient means of verifying.

proffered evidence that either officer acted in bad faith or with malicious intent.

Hence, the arrest resulted from an unfortuitous misunderstanding between the

officers regarding the manner in which Haines was to take Holly to the police

station.  Haines could have reasonably believed that Bixler was instructing him to

detain Holly based upon this conversation.  He is therefore entitled to qualified

immunity for Holly's false arrest and false imprisonment claims.

Bixler likewise could have reasonably believed that his response to Haines's

queries was proper under the circumstances.  He intended that Haines not place

Holly in custody, and he did not expressly direct Haines to do so.  He could have

reasonably concluded that his instruction to "have her come back to the station to

be interviewed" furnished a negative response to Haines's question about arrest.

(Doc. 74, Ex. 5 at 9.)  Lamentably, Bixler's assessment was incorrect, but he had no

reason to suspect as much at the time he spoke with Haines.  Bixler therefore acted

reasonably under the circumstances and is entitled to qualified immunity for his

actions.

Holly's arrest was certainly a regrettable occurrence.  Nonetheless, guileless

misunderstandings that result from spur-of-the-moment decision-making are not

the type of pernicious constitutional violations that vitiate qualified immunity.  The

circumstances of Holly's arrest do not establish that Haines and Bixler were

"plainly incompetent."  Blackhawk, 381 F.3d at 215.  Their conversation is a

prototypical example of a message that is garbled in translation.  The world of law

enforcement frequently requires hasty instructions that, in retrospect, could have

19

been transmitted with greater clarity.  Courts cannot impose upon officers the

impossible task of sending and receiving all instructions with pellucid quality in the

heat of the law enforcement moment.  Haines and Bixler are therefore entitled to

qualified immunity.  The motion for summary judgment will be granted with

respect to Holly's false arrest and false imprisonment claim.[9]

_____

[9]Defendants also move for summary judgment on plaintiffs' claims for municipal and supervisory liability against West Manchester Township, the West Manchester Township Police Department, the City of York, the York City Police Department, West Manchester Township Police Chief Arthur D. Smith ("Smith"), and York City Police Commissioner Mark L. Whitman ("Whitman").  As an initial matter, police departments possess no legal existence apart from their chartering municipalities and therefore are not proper defendants in a § 1983 action.  See Martin v. Red Lion Police Dep't, 146 F. App'x 558, 562 n.3 (3d Cir. 2005); Benckini v. Upper Saucon Twp., No. Civ. A. 04-4304, 2005 WL 670688, at *2 (E.D. Pa. Mar.23, 2005).  The motion for summary judgment will be granted with respect to the two police department defendants.

Plaintiffs' counsel has failed to respond to defendants' arguments pertaining to the remaining municipal and supervisory liability claims.  Counsel has effectively and, the court believes, intentionally abandoned them.  Accordingly, summary judgment will be granted in defendants' favor.  See Smith v. Lucas, No. 4:05-CV-1747, 2007 WL 1575231, at *10 (M.D. Pa. May 31, 2007) (holding that the plaintiff abandoned claims by failing to oppose them in response to a motion for summary judgment); Clarity Software, LLC v. Allianz Life Ins. Co. of N. Am., No. 2:04-cv-1441, 2006 WL 2346292, at *5 (W.D. Pa. Aug. 11, 2006) (same); Cacciatore v. County of Bergen, No. Civ.A. 02-1404, 2005 WL 3588489, at *1 n.1 (D.N.J. Dec. 30, 2005) (same).

Notwithstanding abandonment, summary judgment is properly awarded to defendants on these claims.  Both municipal and supervisory liability require that the plaintiff's injury result from a policy, practice or custom maintained by the defendant.  Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007); Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001).  In the instant matter, plaintiffs have identified no policy, practice, or custom maintained by Smith, Whitman, West Manchester Township, or the City of York.  The only record evidence associated with Whitman or the York City Police Department is the testimony of Figge, who described the events of Donna's arrest but did not discuss municipal policy or practice.  Conway was the sole defendant to testify about the policies, practices, and customs of Smith and the West Manchester Township police.  He stated that West

### B.   State Law Claims

Both plaintiffs advance tort claims under state law against the defendants involved in their respective arrests.  Donna seeks recovery for assault and battery against Conway and Figge while Holly maintains false arrest and false imprisonment claims against Haines and Bixler.  Both plaintiffs seek to hold the four defendants liable for intentional infliction of emotional distress.[10]

### 1.   Assault and Battery

The tort of assault requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension.  See Heverly v. Simcox, No. 4:05-1370, 2006 WL 2927262, at *9 (M.D. Pa. Oct. 11, 2006); D'Errico v. DeFazio, 763 A.2d 424, 431 n.2 (Pa. Super Ct. 2000).  Battery requires proof that the defendant

---

Manchester Township requires officers to undergo annual training on the use of force, including procedures for apprehending suspects.  (Doc. 74, Ex. 3 at 10-11, 55.) He also received annual certification in the use of various police implements, such as batons and Tasers.  (Id. at 9.)  Plaintiffs have failed to describe how these policies are inadequate, nor have they established proximate causation between such policies and their alleged injuries.  Plaintiffs cannot maintain a claim for municipal and supervisory liability in the absence of such evidence.  For these reasons, and in light of plaintiffs' counsel's considerable experience, the court concludes that said counsel has made an informed judgment to forego these claims.

[10]The amended complaint also names Keller, Crider, West Manchester Township, and the West Manchester Police Department in each of the state law counts of the complaint.  However, plaintiffs may not recover against Keller and Crider, who played no role in their arrests.  Under the Pennsylvania Political Subdivisions Tort Claims Act, municipalities possess immunity for the actions of their employees except under certain narrow circumstances not implicated by this case.  See 42 Pa. Cons. Stat. §§ 8541, 8542.  West Manchester Township and its police department are therefore immune from suit.

acted with the intent to cause harmful or offensive bodily contact with the person of

the plaintiff and that such contact actually followed.  See Fulks ex rel. Daniel v.

Gasper, 439 F. Supp. 2d 371, 379 (M.D. Pa. 2006); Montgomery v. Bazaz-Shegal,

742 A.2d 1125, 1130 (Pa. Super. Ct. 1999).  Police officers are privileged to commit

these torts using a reasonable amount of force when effectuating an arrest.  See

Groman, 47 F.3d at 633-34; Restatement (Second) of Torts § 118, 132 (1965)

[hereinafter "Restatement 2d Torts"].  Use of unreasonable or excessive force

dissolves the privilege.  Groman, 47 F.3d at 634;  Restatement 2d Torts § 133.

In the present case, Donna has produced evidence that Conway and Figge

effectuated her arrest using an excessive degree of force.  See supra Part III.A.1.a.

This evidence satisfies her prima facie burden to demonstrate that defendants

committed an assault and battery in an unprivileged manner.  The motion will be

denied with respect to these claims.[11]

## 2.    False Arrest and False Imprisonment

A claim for false imprisonment requires a plaintiff to provide that (1)

defendant intended to confine the plaintiff, (2) defendant performed an action that

directly or indirectly produced such confinement, and (3) plaintiff was either

---

[11]Conway and Figge contend that they possess immunity for plaintiffs' tort claims.  Municipal employees possess immunity to the same extent as their employers, 42 Pa. Cons. Stat. § 8545, unless they commit an act of "willful misconduct," including an intentional tort.  Id. § 8550; Delate v. Kolle, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995).  Plaintiffs seek to hold Conway and Figge liable for the intentional torts of assault and battery.  These claims are outside the scope of defendants' official immunity, and Donna may seek recovery for these torts.

conscious of or harmed by the conduct.  Gagliardi v. Lynn, 285 A.2d 109, 148 n.2 (Pa.

1971) (quoting RESTATEMENT (SECOND) OF TORTS § 35 (1965)); Pennoyer v. Marriott

Hotel Servs., Inc., 324 F. Supp. 2d 614, 619-20 (E.D. Pa. 2004).  In the context of an

arrest, the plaintiff may establish liability for false imprisonment by proving either

that the arrest occurred without probable cause or that the person effecting the

arrest lacked a privilege to do so.  Gagliardi, 285 A.2d at 148 n.3; Cerami v. Blake,

No. Civ.A. 92-4358, 1993 WL 21011, at *6 (E.D. Pa. 1993).  Hence, a "false arrest" is

an alternative means of establishing liability for false imprisonment but "is not itself

a tort in the sense of being an independent source of liability."  Cerami, 1993 WL

21011, at *6 (quoting Gagliardi, 285 A.2d at 111).

     Police officers are privileged to commit the tort of false imprisonment during

an arrest if the officer reasonably believes that the suspect placed under arrest has

committed a crime.  RESTATEMENT 2D TORTS § 121; see also Cambist Films, Inc. v.

Duggan, 475 F.2d 887, 889 (3d Cir. 1973) (applying § 121 of the Restatement under

Pennsylvania common law); Belcher v. United States, 511 F. Supp. 476, 483-84

(E.D. Pa. 1981).  Later exculpation of the suspect does not vitiate the privilege

provided that the officer reasonably believed that the individual had committed a

crime at the time the arrest occurred.  RESTATEMENT 2D TORTS § 121.  The officer is

protected "in every case where he acts under a reasonable mistake as to the

existence of facts which . . . justify an arrest."  Id. § 121 cmt. i; Cambist Films, 475

F.2d at 889.

In the instant matter, Holly advances claims for both false imprisonment and false arrest against Haines and Bixler.  A false arrest does not constitute an independent tort, and the motion for summary judgment will be granted on this claim.  Holly's arrest, effectuated without probable cause, may nevertheless constitute a "false arrest" upon which she may predicate liability for the tort of false imprisonment.  (See supra Part III.A.1.b.)

Haines and Bixler were privileged to commit the tort of false imprisonment. Haines—based upon his conversation with Bixler—could have reasonably believed that Holly had participated in the photographing of H.D.  This belief was later proven erroneous, but it was nevertheless reasonable at the time he arrested her. Therefore, Haines's privilege against liability for false imprisonment remains intact. Similarly, Bixler had no reason to know that Haines would place Holly in custody in light of their conversation.  He cannot be held liable for her alleged harms because they were not reasonably foreseeable to him at the time Haines contacted him. Hence, Haines and Bixler are entitled to summary judgment on Holly's false imprisonment claim.

### 3.    Intentional Infliction of Emotional Distress

In order to sustain a claim for intentional infliction of emotional distress ("IIED"), the plaintiff must establish that:  (1) the defendant's conduct was intentional or reckless, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused emotional distress, and (4) the resultant

emotional distress was severe.[12]  <u>Brufett v. Warner Commc'ns, Inc.</u>, 692 F.2d 910,

914 (3d Cir. 1982).  For an IIED claim to survive, the court[13] must be satisfied that

the defendant's alleged misconduct is so extreme and outrageous that it "go[es]

beyond all possible bounds of decency, and . . . [is] regarded as atrocious, and

utterly intolerable in a civilized society."  <u>Wilkes v. State Farm Ins. Cos.</u>, No. 1:05-

CV-586, 2005 WL 1667396, at *4 (M.D. Pa. July 15, 2005).  Conduct that Pennsylvania

courts have deemed sufficiently outrageous to constitute IIED includes:  (1) killing

the plaintiff's son with an automobile and then burying the body, rather than

reporting the incident to the police; (2) intentionally fabricating documents that led

to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false

medical records diagnosing the plaintiff with a fatal disease.  <u>Hoy v. Angelone</u>, 720

A.2d 745, 754 (Pa. 1998).  In the instant matter, the allegedly improper arrests

performed by Conway, Figge, Bixler, and Haines are not sufficiently extreme and

outrageous to support a claim for IIED.  At most, defendants miscalculated the

propriety of their law enforcement activities.  Their conduct was not of such an

appalling or reprehensible nature as to rise to the level of an IIED claim.  The

---

[12]The Pennsylvania Supreme Court has yet to formally recognize a cause of action for IIED.  <u>Taylor v. Albert Einstein Med. Ctr.</u>, 754 A.2d 650, 652 (Pa. 2000). However, the court has indicated that if it were to recognize such a cause of action, a plaintiff would, at minimum, need to allege the elements set forth above to prevail. <u>Id.</u>

[13]In Pennsylvania, the element of outrageousness has long been regarded as an issue of fact initially reserved for the court.  <u>Swisher v. Pitz</u>, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005).

motion for summary judgment will be granted on plaintiff's cause of action for

IIED.

**IV.**   <u>**Conclusion**</u>

Donna has carried her summary judgment burden with respect to her claims

for excessive force, assault, and battery against Conway and Figge.  Summary

judgment will be granted in defendants' favor on all remaining claims.

An appropriate order accompanies this memorandum.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:        March 31, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNA DULL and HOLLY DULL,** | : | **CIVIL ACTION NO. 1:07-CV-0307** |
| | : | |
| **Plaintiffs** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **WEST MANCHESTER TOWNSHIP** | : | |
| **POLICE DEPARTMENT, WEST** | : | |
| **MANCHESTER TOWNSHIP,** | : | |
| **ARTHUR D. SMITH, JR.,** | : | |
| **SEAN CONWAY, PETER HAINES,** | : | |
| **DAVID KELLER, DAVID BIXLER,** | : | |
| **STEVEN CRIDER, YORK CITY** | : | |
| **POLICE DEPARTMENT, CITY OF** | : | |
| **YORK, MARK L. WHITMAN, and** | : | |
| **NICHOLAS FIGGE,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 31st day of March, 2009, upon consideration of defendants'

motion for summary judgment (Doc. 71), and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

    1.    The motion for summary judgment is GRANTED in part and DENIED
in part as follows:

        a.    The motion is GRANTED with respect to the following claims:

            i.    All claims against West Manchester Township Police
Department, West Manchester Township, Arthur D.
Smith, Jr., Peter Haines, David Keller, David Bixler,
Steven Crider, York City Police Department, City of York,
and Mark L. Whitman.

ii.   The claims for unlawful arrest and unlawful imprisonment under 42 U.S.C. § 1983 and for false arrest, false imprisonment, and intentional infliction of emotional distress under state law against Sean Conway and Nicholas Figge.

b.   The motion is DENIED in all other respects.

2.   The Clerk of Court is instructed to defer entry of judgment until the conclusion of this case.

3.   A revised pretrial and trial schedule shall issue by future order of court.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge